IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JANE TALKINGTON,<br>       Plaintiff,<br><br>v.<br><br>SHARLA HELTON,<br>       Defendant. | Case No. 1:25-cv-01318-JEH-RLH |

**Order**

Now before the Court is Defendant Dr. Sharla Helton's Motion to Dismiss Plaintiff's First Amended Complaint (D. 13).¹ This matter is fully briefed and for the reasons set forth *infra*, the Defendant's Motion to Dismiss is DENIED.

**I**

Plaintiff Jane Talkington originally filed this lawsuit seeking a declaratory judgment against Defendant Helton on August 1, 2025. On September 16, 2025, Plaintiff Talkington filed her First Amended Declaratory Judgment Complaint and Jury Demand (D. 11) invoking federal question subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 "because [this action] involves substantial claims arising under the federal Copyright Act and federal Defendant Trade Secrets Act." Pl.'s 1st Am. Compl. (D. 11 at ECF p. 2). The Plaintiff included four counts: Count I for declaratory judgment of non-infringement of copyright; Count II for declaratory judgment of joint authorship; Count III for declaratory judgment of non-misappropriation of trade secret; and Count IV for a declaration of joint ownership of trade secret in the alternative to

---

¹ Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Count III. *Id*. at ECF pp. 14-16. On September 26, 2025, Defendant Helton filed the instant Motion to Dismiss all of the Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) for lack of jurisdiction and/or improper venue.

Specifically, the Plaintiff alleges[2] Defendant Helton, who resides in Oklahoma, received Botox cosmetic injections in 2006 and around that same time contracted botulism. Dr. Helton sued Allergan, Inc., the maker of Botox, and a jury ultimately awarded her $15,000,000; there was a significant amount of publicity about the case and the factual bases for it. When Plaintiff Talkington was a graduate student at Oklahoma State University in 2015, Dr. Helton provided Talkington with hundreds of research publications that she represented to have used to build her legal case against Allergan. At that time, the Plaintiff had successfully merged twelve research fields into a single dissertation using a historical methodology called Process Tracing, and that is why Dr. Helton sought her services. The Defendant secured the Plaintiff's part-time assistance to conduct further research on Botox and botulism, and the Plaintiff was paid by the hour by Dr. Helton though she was an independent contractor rather than an employee. Talkington was not asked to and never signed a non-disclosure or confidentiality agreement concerning the research or her activities and was not asked to and never signed any document transferring intellectual property (IP) rights of any kind to Dr. Helton. The Plaintiff worked on her personal laptop and in an office, neither of which were provided by Dr. Helton.

Under their independent contractor research arrangement, the Plaintiff and Defendant searched out more articles` concerning Botox, botulism, or both, and

---

[2] At the motion to dismiss stage, a court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor." *Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023).

the research covered topics in publicly available studies and articles. The over 1,000 research articles compiled during their collaborative research effort were all academic articles accessible through libraries and databases. This initial phase of collaboration occurred between 2015 and 2018, and at all times, Dr. Helton explained the research compilation was not just hers but hers and the Plaintiff's. There was no formal or informal agreement as to ownership beyond that. The expectation was that each would publish in their own botulism-related area of interest using their shared resources.

      The Plaintiff earned her Ph.D. in May 2016. She thereafter had access to software used to store and organize the parties' research which was a tool provided by the Plaintiff, not the Defendant. They both downloaded a copy of the compilation at that time, but no formal or informal, written or oral restrictions were placed on the use of the compilation, and no written or oral representations of ownership of the research were made. From 2018 to 2024, the Plaintiff continued her botulism research efforts and collaboration with the Defendant through publicly available resources. The Defendant did not pay the Plaintiff during this stage of research collaboration, and, instead, the Plaintiff became a known botulism academic in her own right.

      The parties' collaboration continued during 2022 through present at which time the Plaintiff taught at Bradley University (Bradley) in Peoria, Illinois. Dr. Helton was "well aware" she was engaged in a research collaboration with an academic at Bradley and "knew" she was working with an academic in Peoria, Illinois. *Id.* at ECF p. 6. During that time: at least 88 emails were exchanged between the parties, all focused on the research collaboration between them; the Defendant was provided with at least 26 academic publications by the Plaintiff in furtherance of their research collaboration; and the Defendant provided the Plaintiff with at least three academic publications in furtherance of their research

3

collaboration. Also during that time, the parties' research collaboration included: a 2022 grant proposal submitted to a Peoria, Illinois hospital; the Plaintiff interviewing botulism victims in Peoria, one of which was done at the Defendant's request and further request that the Plaintiff secure the woman's medical records for the Defendant's review; the Defendant requesting to meet with a Peoria, Illinois IP consultant concerning IP and business opportunities arising from the research collaboration; the Defendant requesting the Plaintiff issue Freedom of Information Act requests to the Centers for Disease Control on Dr. Helton's behalf; the Defendant reviewing early drafts of the Plaintiff's historical botulism book; and the Defendant requesting the Plaintiff secure research articles for her. In April 2023, the Defendant guest lectured on botulism during one of the Plaintiff's courses on Bradley's campus.

Further, the Defendant requested and encouraged the Plaintiff to contact a Chicago Tribune reporter to inquire whether he would consider writing an investigative piece on botulism from Botox. The parties' research collaboration included the Defendant requesting and encouraging the Plaintiff to share counterfeit Botox news reports and the declining of the aforementioned FOIA request by the CDC with the Chicago Tribune reporter. As Talkington summarizes, between 2022 and the filing of this suit, Dr. Helton repeatedly requested Talkington, while in Peoria, Illinois, undertake activities in furtherance of their research collaboration and to generate business opportunities. Talkington further summarizes that she and Dr. Helton "had a productive decade and a half of research, publishing, and awareness collaboration, including efforts and collaboration here, in Illinois." Pl.'s 1st Am. Compl. (D. 11 at ECF pp. 10-11).

Megan McCue, injured from a botulinum toxin injection in July 2024, published and released a book about contracting botulism. McCue met the Plaintiff "virtually" through a Facebook group in the fall of 2024, and, in January

4

2025, asked Talkington to put her in touch with Dr. Helton. *Id*. at ECF p. 11. McCue interviewed, among others, the Plaintiff and Defendant for her book which was released in January 2025. Upon information and belief, the only portions of McCue's book referencing Dr. Helton are from publicly available information. McCue published another book about botulism in April 2025 and while Talkington received a dedication for the book, it was published without her input or advance knowledge.

The Defendant applied for and secured a copyright registration, TXU 2-488-289 for a manuscript, the effective date of that registration being May 13, 2025. The Defendant's attorneys sent the Plaintiff a letter dated June 11, 2025. Pl.'s original Compl. Ex. 1 (D. 1-1 at ECF pp. 1-6).³ In the letter, the Defendant's attorneys stated Dr. Helton held the research compilation in secrecy, and she entrusted Talkington with limited, secure, and secret access to it and her manuscript/Copyrighted Work during Talkington's employment as a research and executive assistant for Dr. Helton. They stated that the Plaintiff infringed Dr. Helton's copyright directly or contributorily by, for example, contributing to and inducing the publication of McCue's first and second books which contain infringed excerpts of Dr. Helton's copyrighted work and of her medical research and opinions. They stated that from social media postings and information, it is clear the Plaintiff is engaging in the unauthorized reproduction, use, public display, and sale of the Defendant's Copyrighted Works and/or contributing or inducing such infringement. They also stated the research compilation constitutes a trade secret and the Plaintiff disclosed it without Dr. Helton's consent by sharing it with McCue and

---

³ The Plaintiff included the June 11, 2025 letter and its attachments to the original Complaint but not to the First Amended Complaint, though she incorporates by reference the letter into the First Amended Complaint. *See* Pl.'s 1st Am. Compl. (D. 11 at ECF p. 12 ¶95); *see also* FED. R. CIV. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

5

sharing/distributing it on a Facebook group. The attorneys additionally stated the Plaintiff committed right of publicity, privacy, and consumer protection violations. They stated the Plaintiff falsified Dr. Helton's story in February 2025 in an interview on Peoria Public Radio. The attorneys demanded Talkington immediately cease and desist from IP infringement, rights of publicity misappropriation, and trade secret misappropriation, and they stated Dr. Helton expressly reserves all her legal and equitable rights and remedies.

## II

A Federal Rule of Civil Procedure 12(b)(2) motion to dismiss asserts a "lack of personal jurisdiction". FED. R. CIV. P. 12(b)(2). A Motion to Dismiss pursuant to 12(b)(2) is a challenge to a court's ability to bring a person into its adjudicative process. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). "In a federal question case . . . a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Relevant to this case, neither the Copyright Act nor federal Defend Trade Secrets Act authorize nationwide service of process. *See MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 224 F. Supp. 3d 621, 628 (N.D. Ill. 2016) (providing the Copyright Act does not authorize nationwide service of process); *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 707 (N.D. Ill. 2017) ("The Defend Trade Secrets Act does not have nationwide service of process that would confer personal jurisdiction over all Defendants . . .."). Thus, the Court must "look to the law of the forum [Illinois] for the governing rule." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Illinois's long-arm statute provides a court may exercise jurisdiction to the extent "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP.

STAT. 5/2-209(c); *see also Mobile Anesthesiologists Chi., LLC*, 623 F.3d at 443 (stating "We have held that there is no operative difference between these two constitutional limits."). "The key question is therefore whether the defendant[] have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700-01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction[]".[4] *Tamburo*, 601 F.3d at 702. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705-06 (7th Cir. 2019) (quoting *Tamburo*, 601 F.3d at 702). The plaintiff bears the burden of demonstrating the existence of jurisdiction. *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). When a district court rules on a defendant's motion to dismiss based on written materials without an evidentiary hearing, the plaintiff must only make out a *prima facie* case of personal jurisdiction. *Id*. The plaintiff's asserted facts are taken as true and the court "may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor. *Id*.

Here, Defendant Helton argues the mere fact that the Plaintiff happens to assert harm or potential harm in Illinois does not suffice to subject Dr. Helton to

---

[4] In her Response to the Motion to Dismiss, the Plaintiff argues the Court has specific, instead of general, jurisdiction over Defendant Helton. *See* Pl.'s Resp. (D. 16 at ECF p. 1). The Court limits its analysis accordingly.

7

litigation in Illinois where there are no allegations or evidence of any conduct that would support the conclusion that Dr. Helton "purposefully directed" any suit-related activities toward Illinois.

As an initial matter, the Court is unpersuaded by the authority the Defendant relies on. First, the Defendant cites cases from outside the Seventh Circuit – the Federal Circuit, to be exact – and cases from outside this district – the Northern Districts of Illinois and Indiana. Out-of-circuit precedent is not binding on this Court, though it is entitled to "respectful consideration." *OSF Healthcare Sys. v. Insperity Grp. Health Plan*, 82 F. Supp. 3d 860, 865 (C.D. Ill. 2015) (quoting *U.S. v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994)). Nor are unpublished district court opinions from within the Seventh Circuit. *See Camreta v. Green*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 MOORE'S FEDERAL PRACTICE § 134.02 (3d ed. 2011)); *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020) (providing that district court opinions are not binding precedential authority). Defendant Helton cites a handful of cases within this Circuit, arguing that "[t]he contacts relevant to personal jurisdiction for a claim of declaratory judgment of non-infringement are based on the defendant's conduct that gives rise to the plaintiff's claim, specifically the defendant's enforcement activity, not its business activity." Def.'s Mot. to Dismiss (D. 14 at ECF p. 11) (citing *Am. Intercontinental Univ., Inc. v. Am. Univ.*, No. 16 C 10669, 2017 WL 3478805, at *3 (N.D. Ill. Aug. 14, 2017) ("The parties agree that, in actions seeking a declaration of noninfringement, the relevant inquiry is whether the defendant patent holder purposefully directed enforcement activities at the forum state and whether the declaratory judgment claim 'arises out of or relates' to those activities.")).

Nearly all those cases, in turn, relied upon the Federal Circuit case *Avocent Huntsville Corp. v. Aten International Co., Ltd.* 552 F.3d 1324, 1332-33 (Fed. Cir. 2008). The *American Intercontinental University, Inc.* district court understood *Avocent* to provide that "the relevant contacts are the defendant's enforcement activity, not its business activity." *Am. Intercontinental Univ., Inc. v. Am. Univ.*, 2017 WL 3478805, at *3 (citing *Avocent*, 552 F.3d at 1332). The Federal Circuit explained in *Avocent* that "the nature of the claim in a declaratory judgment action is to clear the air of infringement charges[]" and concluded, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be other activities directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Id.* (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1197, 1202 (Fed. Cir. 2003) (emphasis added by *Avocent*)). The *Avocent* court cited, among others, its decisions in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), and *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194 (Fed. Cir. 2003).

Significantly, though neither party mentions it, the Federal Circuit itself, in April 2022, explained the district court in *Apple Inc. v. Zipit Wireless, Inc.*:

> erred in reading our precedent as creating a bright-line rule that communications directed to "the attempted resolution" of the parties' dispute regarding the patents-in-suit trumps all other considerations of fairness and reasonableness. Although some of our earlier precedent relying on *Red Wing Shoe* suggests that there is such a bright-line rule, *see, e.g.*, *Avocent*, 552 F.3d at 1340; *Breckenridge*, 444 F.3d at 1362; *Silent Drive*, 326 F.3d at 1206, Supreme Court precedent (both pre- and post-*Red Wing Shoe*) has made clear that jurisdictional inquiries cannot rest on such bright-line rules — there are no "talismanic jurisdictional formulas." *Burger King*, 471 U.S. at 485, 105 S. Ct. 2174. Rather, "'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 485–86, 105 S. Ct. 2174 (alteration in original) (quoting *Kulko v. Superior Ct. of Cal.*, 436 U.S.

> 84, 92, 98 S. Ct. 1690, 56 L.Ed.2d 132 (1978)); *Bristol-Myers Squibb*, 137 S. Ct. at 1780 ("In determining whether personal jurisdiction is present, a court must consider a variety of interests.").

30 F.4th 1368, 1378-79 (Fed. Cir. 2022). In other words, Defendant Helton's emphasis upon the body of case law stemming from *Avocent*, specifically the bright line rule for claims of declaratory judgment of non-infringement which that body of case law took from it, do not control this Court's inquiry.[5] Instead, as the Federal Circuit more recently clarified, the facts of each case must always be weighed in deciding whether exercising personal jurisdiction would adhere to the controlling constitutional standards.

**A**

Defendant Helton argues the First Amended Complaint is devoid of any facts alleging she engaged in any sort of purposeful availment of, or direction of activities to, Illinois. She points out she does not live in Illinois, owns no property here, has no address or phone number in Illinois, has no bank accounts here, does not conduct any business in Illinois, and does not have any ownership interest in any business based or incorporated in Illinois. She highlights that, instead, the manuscript she authored was created in Oklahoma, her copyright registration was obtained there, and the cease-and-desist letter to the Plaintiff was sent from Oklahoma by Defendant's counsel who is also from Oklahoma. Defendant Helton

---

[5] Several of the Defendant's cases cited from within this Circuit pre-date April 2022. As for the two cited cases that post-date it and still rely upon it for a bright line rule, they are rejected in light of the Federal Circuit's explanation in *Apple, Inc.*, in addition to being non-binding. *See Discounted Water Filters, Inc. v. A.O. Smith Water Treatment (N. Am.), Inc.*, No. 23-cv-01416, 2024 WL 4522812, at *4 (C.D. Ill. June 12, 2024) (listing *Avocent* as authority for placing the focus on whether a defendant purposefully directed its efforts to enforce its trademark protections at Illinois and its residents before moving on to consider whether an exercise of jurisdiction based on the defendant's enforcement efforts comported with traditional notions of fair play and substantial justice); *and My Own Meals, Inc. v. PurFoods, LLC*, No. 22 C 0892, 2022 WL 2132729, at *4 (N.D. Ill. June 14, 2022) (relying, in part, on the Federal Circuit's opinion in *Red Wing Shoe Co.* where it addressed, in the patent context, the lack of fairness in grounding jurisdiction on one or two cease-and-desist letters).

insists that the Plaintiff conflates two categories of conduct - Helton's authorship and enforcement of rights in her completed manuscript which occurred entirely in Oklahoma and later conversations about potential, unrelated projects – the latter of which, per Dr. Helton, having nothing to do with the Plaintiff's declaratory judgment claims.

The Plaintiff counters that Defendant Helton's "extensive contacts" with Illinois demonstrate she purposefully directed her activities at Illinois. Pl.'s Resp. (D. 16 at ECF p. 8). Talkington argues Dr. Helton's contacts in Illinois are the opposite of random, fortuitous, or attenuated where, between 2022 and the filing of this lawsuit, she repeatedly requested Talkington, in Peoria, Illinois, undertake activities in furtherance of the research collaboration and to generate business opportunities, and Dr. Helton coordinated publishing and business opportunities related to their botulism work. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"). She also emphasizes that Dr. Helton guest lectured in April 2023 at Bradley in Peoria, Illinois. With regard to Dr. Helton's conflation argument, the Plaintiff counters there are no such separate categories, stating in her Declaration that she "conducted research, collaborated, and discussed numerous articles and materials that made their way into Dr. Helton's manuscript", the copyrighted material for which she seeks a declaration of non-infringement. Plf's Resp. Decl. (D. 16-1 at ECF p. 3 ¶21).

As for the first requirement of specific jurisdiction, the "minimum contacts" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S 277, 285 (2014); *see also Matlin*, 921 F.3d at 706 ("For a court performing a minimum-contacts analysis for personal jurisdiction purposes, '[t]he relevant contacts are

those that center on the relations among the defendant, the forum, and the litigation.'") (quoting *Advanced Tactical Ordnance Sys.*, LLC, 751 F.3d at 801). The Seventh Circuit has stated that "the nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). Here, the Plaintiff not only seeks declarations of non-infringement of copyright and non-misappropriation of trade secret, she also seeks declarations of joint authorship and of joint ownership of trade secret, all of which have their genesis in IP at least partially developed in Illinois. Put simply, central to this case are the acts that occurred in this forum.

Dr. Helton "purposefully reached out beyond [her] State [Oklahoma] and into another [Illinois]" where she repeatedly requested Talkington undertake activities in furtherance of their research collaboration and to generate business opportunities in Illinois including a 2022 grant proposal submitted to a Peoria, Illinois hospital, the Plaintiff's interview of and request for the medical records of a botulism victim in Peoria both done at the Defendant's request, the Defendant's request to meet with a Peoria, Illinois IP consultant concerning IP and business opportunities arising from the research collaboration, and the Defendant's request that the Plaintiff secure research articles for her. *Walden*, 571 U.S. at 285 ("we have upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State") (quoting *Burger King*, 471 U.S. at 479-80). Notably, Defendant Helton guest lectured in April 2023 at Bradley in Peoria, Illinois. *See id.* ("physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact").

12

As for the Defendant's conflation argument, the Plaintiff states in her Declaration that she "conducted research, collaborated, and discussed numerous articles and materials that made their way into Dr. Helton's manuscript". Pl.'s Resp. Decl. (D. 16-1 at ECF p. 3 ¶21). Given the conflict between the parties' asserted facts, the Plaintiff is entitled to resolution in her favor at this stage. *NBA Properties, Inc.*, 46 F.4th at 620. Thus, the Court has properly considered the aforementioned contacts. Moreover, to consider all of the Defendant's alleged contacts with Illinois does not amount to impermissible aggregation under the particular facts of this case. *See Matlin*, 921 F.3d at 706 ("[w]e cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts.") (internal citation omitted). As the Plaintiff puts it, the contacts all relate to the same ongoing research collaboration and the IP rights now in dispute.

The Court finds the Plaintiff has satisfied the first requirement for this Court's exercise of personal jurisdiction over the Defendant.

**B**

The Defendant argues none of her actions related to the IP at issue occurred in or were directed to the State of Illinois as the creation of her manuscript, the alleged research compilation, and claims of ownership all occurred in Oklahoma. Citing several cases, Dr. Helton contends a single cease-and-desist letter cannot establish personal jurisdiction for a declaratory judgment action where the case or controversy exists only as a result of that letter. The Plaintiff disputes Dr. Helton can claim in the first instance that this suit is unrelated to the latter's Illinois activities when the dispute centers on the IP co-developed through those very activities.

13

With regard to the second requirement of specific jurisdiction, "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 264 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. at 284) (emphasis supplied).

Here, the Plaintiff insists that the alleged injury arose out of forum-related activities where over 30 articles and publications stemming from Peoria, Illinois-based collaboration, whether uncovered, discussed, or otherwise brought to Dr. Helton's attention by Talkington in Peoria, Illinois, were referenced over 100 times in Dr. Helton's manuscript and where this lawsuit is directly related to Helton's contacts with Illinois, those being Peoria, Illinois-based collaboration about botulism as well as research, publications, and business opportunities from it. The Plaintiff also insists that this is not just a declaratory judgment action on non-infringement as it seeks to have ownership of Illinois-developed IP settled.

Indeed, this case for declaratory judgment of non-infringement, as the Defendant repeatedly attempts to distill it, is a nuanced one. This is not a case where the allegations are merely the defendant authored an original literary work solely within another state, the defendant had no contact with the forum whatsoever until discovering a potential copyright infringement by an individual within the forum State, and only then the defendant made contact with the forum state via a cease-and-desist letter sent to the infringing person within the forum state. On the contrary, the Plaintiff here essentially alleges that the copyrighted manuscript is a result of a research collaboration, generally, and the Plaintiff's

14

efforts done at the Defendant's direction, specifically, both having occurred in Illinois. Stated differently, the Plaintiff's claims are really about the existence of the copyright itself. Of consequence here, the Supreme Court somewhat recently stated, "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). The Court will not take so constrained a view as the Defendant of the alleged facts of this case; to do so *would* offend traditional notions of fair play and substantial justice.

In terms of fairness, the Court must consider several factors once minimum contacts with the forum state are established:

> The burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies.

*NBA Properties, Inc.*, 46 F.4th at 627 (quoting *Ill. v. Hemi Group LLC*, 622 F.3d 754, 759 (7th Cir. 2010)); *Burger King Corp.*, 471 U.S. at 477. In this case, the burden on the Defendant is not excessive in light of the Plaintiff's allegations that the Defendant came to Peoria, Illinois to guest lecture at Bradley and requesting to meet with a Peoria, Illinois IP consultant. This forum has an interest in adjudicating this dispute; as the Plaintiff puts it, Illinois has a strong interest in adjudicating IP disputes because "[i]ntellectual property drives innovation and supports large enterprises", and Illinois "has an interest in fostering academic research like that done at Bradley University" within this forum. Pl.'s Resp. (D. 16 at ECF p. 15). Plaintiff Talkington has an interest in obtaining convenient and effective relief at one time and in one place as to all of her claims stemming from the same underlying set of facts, namely, her research collaboration with Dr.

Helton which occurred, in meaningful part, in Illinois. The interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute means the case should stay where it properly began. Neither party makes a compelling argument as to the last factor.

The Defendant's application of the *Burger King* factors misses the point. Again, this lawsuit arises from more than just Dr. Helton's conduct in registering her manuscript in and sending her cease-and-desist letter from Oklahoma. Preceding that conduct was a research collaboration between Talkington and Dr. Helton which took place in Illinois, the fruits of the collaboration appearing in the manuscript of which Dr. Helton claims as only her original work of authorship. Defendant Helton ultimately fails to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

The Court finds the Plaintiff has satisfied the second requirement for this Court's exercise of specific personal jurisdiction over the Defendant, and such exercise does not offend traditional notions of fair play and substantial justice.

### III

The parties also dispute the propriety of venue in the U.S. District Court for the Central District of Illinois, Peoria Division. Title 28 of the United States Code, Section 1391(b) provides:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). Defendant Helton argues neither 1391(b)(1) nor (2) is satisfied here and thus venue in Illinois is improper. Plaintiff Talkington counters that "[m]ost obviously," Dr. Helton reached into this district to destroy IP, and ownership of IP developed in this district is half this case. Pl.'s Resp. (D.16 at ECF p. 16). Certainly, the Plaintiff's alleged facts considered in the Court's analysis of specific personal jurisdiction *negate* the Defendant's contention that Section 1391(b)(2) does not apply here. The Defendant's persistence in taking a constrained view of the allegations in this case is simply unavailing in terms of venue as well. Section 1391(b)(2) speaks for itself as to where the focus must be placed, and here, the Peoria Division of this district is a proper venue.

## IV

For the reasons set forth *supra*, Defendant Dr. Sharla Helton's Motion to Dismiss Plaintiff's First Amended Complaint (D. 13) is DENIED. Defendant Helton must file her answer within 14 days of the date of this Order. This matter is referred to the Magistrate Judge for a Rule 16 scheduling conference.

*It is so ordered.*

Entered on October 29, 2025

        s/Jonathan E. Hawley
        U.S. DISTRICT JUDGE