E-FILED
Wednesday, 29 July, 2026  09:16:58 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| **JANE TALKINGTON,**<br>    Plaintiff / Counter-Defendant, | |
| | |
| v. | Case No. 1:25-cv-01318-JEH-RLH |
| | |
| **SHARLA HELTON,**<br>    Defendant / Counter-Plaintiff /<br>    Third-Party Plaintiff, | District Judge Jonathan E. Hawley<br><br>Magistrate Judge Ronald L. Hanna |
| | |
| v. | |
| | |
| **MEGAN McCUE,**<br>    Third-Party Defendant. | |

**THIRD-PARTY PLAINTIFF SHARLA HELTON'S RESPONSE IN OPPOSITION TO
THIRD-PARTY DEFENDANT MEGAN McCUE'S MOTION TO DISMISS
<u>THIRD-PARTY CLAIMS UNDER RULE 12(b)(6) [DKT. 58]</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

LEGAL STANDARD............................................................................................... 2

ARGUMENT ........................................................................................................... 3

　I.　The Motion's initial premise that Helton does not incorporate any allegations from her Counterclaims into her Third-Party Claims is contradicted by the operative pleading...... 3

　　A. Each Third-Party Claim incorporates the Counterclaims and the Factual Narrative. ........ 3

　　B. McCue's "does not identify [　]" assertions ignore the incorporated allegations. ............. 4

　　C. The Motion mischaracterizes the pleading, including by attributing to Dr. Helton an "admission" that does not appear on the cited page. ........................................... 5

　II. Dastar does not foreclose the False-Designation-of-Origin / False-Association Claim. ........ 6

　III. The False-Advertising Claim Is Adequately Pleaded. .............................................. 8

　　A. Helton identifies specific promotional statements, not private communications. ............. 9

　　B. The "information and belief" allegations satisfy Rule 9(b) as pleaded, because the underlying facts lie peculiarly within McCue's knowledge.............................................. 10

　IV. The California Statutory Claims (Counts III and IV) adequately plead standing, and the UCL Claim Survives on Its Unlawful, Unfair, and Fraudulent Prongs. ........................... 12

　　A. Both claims satisfy the "lost money or property" standing requirement. ........................ 12

　　B. The UCL claim survives on the "unlawful" and "fraudulent" prongs regardless of the competition question............................................................................................... 14

　　C. The Motion's restitution argument goes to remedy, not to the sufficiency of the claim. . 14

　V. The Fraudulent-Misrepresentation Claim Pleads Actionable Promissory Fraud.................. 15

　　A. The Motion misreads the pleading; there is no admission and no contradiction.............. 16

　　B. Dr. Helton pleads actionable misrepresentation of present fact, not an unfulfilled promise............................................................................................................... 17

　VI. The Civil-Conspiracy Claim Is Derivative and Survives With the Underlying Torts......... 18

　VII. The Section 632 Recording Claim Is Not Time-Barred—McCue's Own Authority Applies the Discovery Rule................................................................................................... 19

　VII. Any Dismissal Should Be With Leave to Amend. ................................................... 21

CONCLUSION........................................................................................................ 21

CERTIFICATE OF COMPLIANCE ......................................................................... 23

CERTIFICATE OF SERVICE ................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) ................................................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 3

*Ballard v. Ameren Ill. Co.*,
   173 F.4th 946 (7th Cir. 2026) ................................................................................... 19

*Beckwith v. Dahl*,
   205 Cal. App. 4th 1039 (2012) .................................................................................. 17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 3

*Burton v. Ghosh*,
   961 F.3d 960 (7th Cir. 2020) ..................................................................................... 19

*Cel-Tech Commc'ns v. L.A. Cellular Tel.*,
   20 Cal. 4th 163 (1999) ............................................................................................... 14

*Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*,
   770 F.3d 610 (7th Cir. 2014) ..................................................................................... 19

*City of Industry v. City of Fillmore*,
   198 Cal. App. 4th 191 (2011) .................................................................................... 18

*Clayworth v. Pfizer, Inc.*,
   49 Cal. 4th 758 (2010) ............................................................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003).......................................................................................................... 6

*Estate of Darger v. Lerner*,
   665 F. Supp. 3d 931 (N.D. Ill. 2023) ....................................................................... 19

*First Health Group Corp. v. BCE Emergis Corp.*,
   269 F.3d 800 (7th Cir. 2001) ....................................................................................... 9

*Gensler v. Strabala*,
  764 F.3d 735 (7th Cir. 2014) ................................................................. 6, 10, 11

*ISI International, Inc. v. Borden Ladner Gervais LLP*,
  316 F.3d 731 (7th Cir. 2003) ................................................................... 9

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) .......................................................................... 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ........................................................................ 15

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................... 12, 13, 14, 15

*Las Palmas Assoc. v. Las Palmas Center Assoc.*,
  235 Cal. App. 3d 1220 (1991) ................................................................ 17

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (1996) .......................................................................... 17

*Lexmark Int'l v. Static Control Components*,
  572 U.S. 118 (2014)............................................................................... 6, 8

*Maremont v. Susan Fredman Design Grp., Ltd.*,
  772 F. Supp. 2d 967 (N.D. Ill. 2011) ...................................................... 7

*Martin v. Living Essentials*,
  653 F.App'x 482 (7th Cir. 2016) ............................................................. 6

*Minerva Sportswear v. First to the Finish Kim & Mike Viano Sports*,
  No. 19-2034, 2020 WL 12811576 (C.D. Ill. Mar. 9, 2020)......................... 7

*Montalti v. Catanzariti*,
  191 Cal. App. 3d 96 (1987) ............................................................... 19, 20

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
  86 Cal. App. 4th 303 (2000) ................................................................... 15

*Ortho-Tain, Inc. v. Colorado Vivos Therapeutics, Inc.*, No. 20 C,
  4301, 2024 WL 3925408 (N.D. Ill. Aug. 23, 2024) ................................. 7, 10

*Rojas v. HSBC Card Services, Inc.*,
  93 Cal. App. 5th 860 (2023) ................................................................... 21

iv

*Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*,
786 F.3d 510 (7th Cir. 2015) ..................................................................... 21

*Service by Medallion v. Clorox*,
44 Cal. App. 4th 1807 (1996) ..................................................................... 17

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
782 F.3d 922 (7th Cir. 2015) ..................................................................... 19

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ..................................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..................................................................... 3

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ..................................................................... 11

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*,
370 F. Supp. 3d 873 (N.D. Ill. 2019) ..................................................................... 10, 11

*Watkins v. Mohan*,
144 F.4th 926 (7th Cir. 2025) ..................................................................... 19

*Zhang v. Superior Court*,
57 Cal. 4th 364 (2013) ..................................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 17200 ..................................................................... 12, 14
Cal. Bus. & Prof. Code § 17204 ..................................................................... 12
Cal. Bus. & Prof. Code § 17500 ..................................................................... 12
Cal. Penal Code Section 632 ..................................................................... 19

**Rules**

Fed. R. Civ. P. 8(a)(2) ..................................................................... 2
Fed. R. Civ. P. 12(b)(6) ..................................................................... passim

v

Defendant, Counter-Plaintiff, and Third-Party Plaintiff Dr. Sharla Helton ("Dr. Helton"), by and through undersigned counsel, respectfully submits this response in opposition to the Motion to Dismiss the Third-Party Claims under Federal Rule of Civil Procedure 12(b)(6) [Dkt. 58] (the "Motion") filed by Third-Party Defendant Megan McCue ("McCue"), and states as follows:

## INTRODUCTION

McCue's Motion is built on a premise that the operative pleading refutes in its own words. The Motion tells the Court that "Helton does not incorporate any allegations from her Counterclaims into her Third-Party Claims." [Dkt. 58 at 1.] From that premise, the Motion argues, claim after claim, that Dr. Helton "identifies no" advertisement, no services, and no competition, and "simply concludes" she was damaged. Every one of those arguments depends on reading each Third-Party Claim in isolation. But each of the seven Third-Party Claims expressly re-alleges and incorporates "her Counterclaims and Factual Narrative thereof" together with the Third-Party Complaint's own Factual Narrative "with the same force and effect as if fully set forth herein." [Dkt. 35 ¶¶ 109, 122, 131, 140, 149, 171, 185.] Read as actually pleaded, with the incorporated allegations and with every reasonable inference drawn in Dr. Helton's favor, the Third-Party Claims state plausible claims for relief.

The Motion's remaining arguments fare no better, and McCue's own authorities defeat several. McCue invokes *Dastar* to "foreclose" the false-association claim, but *Dastar* bars only authorship-origin (reverse passing-off) claims, not the persona-based false-endorsement claim Dr. Helton actually pleads. McCue cites *Lazar* to defeat the fraud claim, but *Lazar* is the leading California authority recognizing promissory fraud—a misrepresentation of present intent, which is an existing and pleaded fact. McCue invokes *Kwikset* to defeat statutory standing, but *Kwikset* defines the very "lost money or property" categories Dr. Helton pleads. And McCue relies on

1

*Montalti* for a one-year limitations bar on the recording claim, but *Montalti* applies the discovery rule and holds that the clock does not run while a secret recording "remains secret." Given the Motion's legal and factual defects, the Motion should be denied in its entirety.

## BACKGROUND

Dr. Helton is a globally recognized physician and botulism researcher whose name, personal botulism story, and professional reputation are widely known. [Dkt. 35, ¶ 111.] In early January 2025, at Talkington's urging and based on representations that McCue was a botulism victim seeking support, Dr. Helton agreed to a single telephone call with McCue on January 8, 2025. [*Id.*, ¶¶ 151–157.] Dr. Helton maintains a strict no-interview policy, and McCue did not disclose that she was, in fact, writing a substantive work on the legal history and research related to botulinum toxin injections[1], or that she intended to cite Dr. Helton as a source. [*Id.*, ¶¶ 152–157, 165–166.] Approximately eleven days later, on or about January 19, 2025, McCue self-published *Notox: The Shocking Truth About Cosmetic Injections*, devoting at least six pages to Dr. Helton's personal story and citing "personal communications with Dr. Helton" as a source for previously non-public details of Dr. Helton's experience. [*Id.*, ¶¶ 114–115, 163–164.] Dr. Helton further alleges, upon information and belief, that McCue recorded the January 8 call without her knowledge or consent. [*Id.*, ¶¶ 192–193, 195.] Dr. Helton asserts seven Third-Party Claims arising from McCue's conduct.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), with

---

[1] *Notox: The Shocking Truth About Cosmetic Injections* (back cover) ("*Notox* walks readers through the surprising history of botulinum toxin injections and the troubling legal cases involving the drug."); *see also* Product Description, Amazon, https://www.amazon.com/Notox-Shocking-Truth-Cosmetic-Injections/dp/B0DTKHKRLW (last visited July 24, 2026).

2

enough factual matter to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the pleader's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

As such, a Rule 12(b)(6) motion tests only the sufficiency of the pleading; it is not the occasion to resolve factual disputes, weigh competing inferences, or decide the merits. Thus, arguments that a pleading "contradicts" itself, or that a party "really" knew or intended something other than what she has alleged, are improper at this stage. Furthermore, a statute-of-limitations defense supports dismissal only where the pleading's own allegations establish that the claim is untimely.

## ARGUMENT

I.    **The Motion's initial premise that Helton does not incorporate any allegations from her Counterclaims into her Third-Party Claims is contradicted by the operative pleading.**

A.    Each Third-Party Claim incorporates the Counterclaims and the Factual Narrative.

The Motion opens on a factual assertion that the pleading itself refutes. McCue represents to the Court that "Helton does not incorporate any allegations from her Counterclaims into her Third-Party Claims" and that "[t]his motion addresses only the allegations and claims made against McCue." [Dkt. 58 at 1.] That assertion is incorrect on the face of the pleading. The First Third-Party Claim "re-alleges her Answer to Plaintiff's Complaint, her Counterclaims and Factual Narrative thereof, and Paragraphs 1 through 108 of her Factual Narrative hereof, with the same force and effect as if fully set forth herein." [Dkt. 35, ¶ 109.] Each successive claim opens the same way, reincorporating the same materials. See Dkt. 35 ¶¶ 122, 131, 140, 149, 171, 185

3

(incorporating, respectively, Paragraphs 1 through 121, 130, 139, 148, 170, and 184 "with the same force and effect as if fully set forth herein").[2] The incorporation is unambiguous and effective: each Third-Party Claim carries not only the 108-paragraph factual narrative that precedes the causes of action, but also the Counterclaims and their narrative.

Two points follow, and the Court need reach only the first. **First**, whatever the Motion says about the Counterclaims, it does not dispute, and could not dispute, that each Third-Party Claim incorporates "Paragraphs 1 through [108/121/130/139/148/170/184] of her Factual Narrative *hereof*," that is, the Third-Party Complaint's own 108-paragraph Factual Narrative. That narrative alone contains every fact the Motion says is missing, so each of the Motion's "identifies no ___" arguments fails even on the Motion's own premise. **Second**, and in the alternative, each claim also incorporates the Counterclaims and the Factual Narrative thereof, precisely as the quoted language provides.

### B.  McCue's "does not identify [   ]" assertions ignore the incorporated allegations.

Because each claim incorporates the Factual Narrative, the Motion's recurring refrains collapse. The Motion says Dr. Helton "does not identify ANY 'advertisement' or 'promotion,'" [Dkt. 58, pp. 2, 4], but the incorporated allegations identify McCue's reader- and audience-facing representations that she interviewed Dr. Helton and that Dr. Helton was her "mentor," and the podcast through which McCue promoted the book. [Dkt. 35, ¶¶ 125–127.]

---

[2] The absence of the word "re-alleges" from the opening clause of third-party claims 2-6 (¶¶ 122, 131, 140, 149, 171, and 185) is a typographical omission of no consequence. The intent is unmistakable given ¶ 109's express incorporation and each of the following opening paragraphs retaining the same operative language and thus incorporating the identified allegations "with the same force and effect as if fully set forth herein." Such incorporation is precisely the adoption Rule 10(c) contemplates, and ¶ 109 states the full formulation.

The Motion says Dr. Helton identifies no "services" and no "competition," [Dkt. 58, pp. 3, 5–6], but Dr. Helton alleges that McCue is "a direct competitor of Dr. Helton . . . in the same market of botulism literature, botulism patient advocacy, and botulism research," and that Dr. Helton "has, for years, been preparing the Botulism Manuscript." [Dkt. 35, ¶ 145; see *id.* ¶ 146.]

And the Motion says Dr. Helton "simply concludes" damages, [Dkt. 58 at 5], but the paragraph it quotes is a prayer-for-relief paragraph; the economic-injury allegations are pleaded in the incorporated Factual Narrative, i.e., the loss of the first-to-market value of the Botulism Manuscript, diminution of the value of the Trade Secret and Research Compilation, and McCue's commercial exploitation of Dr. Helton's identity and reputation. [Dkt. 35, ¶¶ 3, 118, 120, 145–147.]

C. <u>The Motion mischaracterizes the pleading, including by attributing to Dr. Helton an "admission" that does not appear on the cited page.</u>

On a Rule 12(b)(6) motion, the Court takes the pleaded allegations as true; the Motion repeatedly does the opposite. Most concretely, in attacking the fraud and conspiracy claims, the Motion quotes Dr. Helton as "admit[ting]" that she "did not disclose any information about or relating to her personal botulism story, botulism research . . . or . . . the Research Compilation," and cites "Dkt. 35 at ECF 190." [Dkt. 58, at 8, 10.] The quoted language does not appear at ECF 190. It appears at Dkt. 35, ECF p. 191 (¶ 157), and it describes Dr. Helton's guarded conduct during the very call McCue procured under false pretenses. Dkt. 35, ECF p. 190 (¶ 155) says something different and adverse to McCue: that McCue's January 6 text gave "a desire to raise awareness among speech-language pathologists via a podcast as the sole reason for her questions" and "did not disclose any plans for writing a book." Read as pleaded, Dr. Helton's careful nondisclosure and McCue's concealment of her book plans are not admissions that defeat the claims; rather, they are allegations that support them. The Motion's contrary use of this material,

5

like its argument that the fraud theory "contradicts" Dr. Helton's other allegations, [Dkt. 58 at 8], asks the Court to draw inferences against the non-movant, which Rule 12(b)(6) forbids.

**II.    Dastar does not foreclose the False-Designation-of-Origin / False-Association Claim.**

McCue argues that the § 1125(a)(1)(A) claim is "foreclosed by *Dastar*" because "origin" means "the producer of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." [Dkt. 58 at 2–3 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003)).] However, that argument answers a claim Dr. Helton did not plead. Dr. Helton alleges that McCue used Dr. Helton's name, persona, and professional reputation to falsely signal that Dr. Helton sponsored, endorsed, or was otherwise affiliated with McCue's book. [Dkt. 35, ¶¶ 110, 114–117.] This is a false-endorsement and false-association claim, which *Dastar* does not reach.

The scope of *Dastar*'s authorship-origin holding is distinct from liability based upon false endorsement or false association under § 1125(a)(1)(A). See *Dastar*, 539 U.S. 23. *Dastar* did not disturb, and does not bar, the separate statutory prohibition on representations likely to cause confusion as to a person's sponsorship, approval, or affiliation (false-endorsement or false-association). *See Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 122 (2014) ("creat[ing] two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)"); *Martin v. Living Essentials*, 653 F.App'x 482 (7th Cir. 2016) (analyzing a false-endorsement claim under § 1125(a)(1)(A) by asking whether an ordinary consumer would be misled into thinking the plaintiff endorsed the defendant's product). The Seventh Circuit has likewise cautioned against reading *Dastar* beyond its terms: *in Gensler v. Strabala*, 764 F.3d 735, 736-37 (7th Cir. 2014), the court held that a district court "misreads *Dastar*" when it treats the tangible-goods limitation as disposing of a § 43(a) claim, and vacated the dismissal on that basis.

6

Dr. Helton pleads a "false designation of origin, false description, and false representation that Dr. Helton sponsors, approves, endorses, or is affiliated with Third-Party Defendant McCue's goods and services." [Dkt. 35, ¶¶ 110, 117.]

Particularly, Dr. Helton alleges that McCue used Dr. Helton's name and reputation, i.e., devoting at least six pages of *Notox* to Dr. Helton's personal story and citing "personal communications with Dr. Helton" as a source, to create a false impression that Dr. Helton "sponsors, approves, endorses, or is affiliated with" the book, and a corresponding "likelihood of confusion . . . as to the origin, sponsorship, or approval" of the book. [Dkt. 35, ¶¶ 114–117.] The pleading further alleges that Dr. Helton's "name, personal botulism story, and public image or reputation . . . are distinctive and widely known among consumers, as well as among botulism victims and their families." [*Id.*, ¶ 111.] That is a textbook false-endorsement theory, which courts in this Circuit and this District recognize as distinct from *Dastar*'s authorship-origin holding. *See Maremont v. Susan Fredman Design Grp., Ltd.*, 772 F. Supp. 2d 967 (N.D. Ill. 2011) (professional who was well known in her field and engaged in the commercial marketing of her skills sufficiently alleged a Lanham Act false-endorsement claim based on the defendants' deceptive use of her name and likeness; celebrity status is not required); *Minerva Sportswear v. First to the Finish Kim & Mike Viano Sports*, No. 19-2034, 2020 WL 12811576, at *6 (C.D. Ill. Mar. 9, 2020) (denying a Rule 12(b)(6) motion to dismiss a § 43(a)(1)(A) false-endorsement claim where the plaintiff plausibly alleged that the defendant's representations would cause consumers to believe the plaintiff endorsed the defendant's products).

*Dastar* only limits a § 1125(a)(1)(A) claim in cases where the claim targets the intangible idea or content of a work rather than the use of identity to imply endorsement. *See Ortho-Tain, Inc. v. Colorado Vivos Therapeutics, Inc.*, No. 20 C 4301, 2024 WL 3925408, at *4–6 (N.D. Ill.

Aug. 23, 2024) (dismissing a § 1125(a)(1)(A) count under *Dastar* precisely because the plaintiff's theory rested on the content of advertising material (i.e., "the connection between the favorable results and appliances is an intangible idea or concept") rather than on any misuse of a person's identity, while sustaining the related § 1125(a)(1)(B) false-advertising count). Dr. Helton's claim rests on McCue's use of her identity to imply endorsement and affiliation, not on the content of McCue's book, and whether the pleaded facts ultimately establish consumer confusion as to endorsement is a fact question that cannot be resolved on the pleadings.

Nor does the Motion's observation that Dr. Helton has not yet published a competing book bear on this claim. Section 1125(a) reaches a plaintiff who alleges "an injury to a commercial interest in reputation **or** sales," *Lexmark*, 572 U.S. at 131–32 (emphasis added), and the Supreme Court has made clear that "when a party claims reputational injury from disparagement, competition is not required for proximate cause," *Id.* at 138. Dr. Helton pleads commercial-reputation injury directly: "damage to her reputation, unauthorized usurpation and commercial exploitation of her name, likeness, and personal story, and impairment of Dr. Helton's commercial and professional economic opportunities," [Dkt. 35, ¶ 118; *see Id.* ¶ 120], together with a manuscript she has spent "over fifteen years" preparing, [*Id.*, ¶ 108], a proprietary research asset that "assisted in securing a $15,000,000 product liability lawsuit verdict," [*Id.*, ¶ 107], pro bono expert-witness services, [*Id.*, ¶ 102], and botulism patient advocacy and counseling, [*Id.*, ¶ 111]. Whether Dr. Helton's identity carries the commercial recognition the claim ultimately requires is, in any event, a factual question unsuited to resolution on the pleadings.

### III. The False-Advertising Claim Is Adequately Pleaded.

McCue argues that the § 1125(a)(1)(B) claim is pleaded "upon information and belief" and fails Rule 9(b), and that describing the contents of a book is not "commercial advertising or

promotion" under *ISI International, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003). [Dkt. 58 at 3–4.] Neither argument supports dismissal at the pleading stage, and to the extent the Court finds the allegations insufficiently specific, the remedy is leave to amend, not dismissal with prejudice.

A.  Helton identifies specific promotional statements, not private communications.

The Motion's contention that Helton "*does not* identify ANY advertisement" again proceeds from its refusal to read the incorporated Factual Narrative. See *supra* Part I. Read as a whole, the pleading identifies particular public, consumer-facing representations: that McCue "represented to potential consumers and readers of Notox" that she had "interviewed Dr. Helton for the purpose of researching and writing Notox," Dkt. 35 ¶¶ 61, 125; that Dr. Helton "was a mentor" who "helped her unentangle the complexities of the botulism toxin," *Id.* ¶¶ 62, 126; and that McCue publicly claimed "close and personal knowledge of Dr. Helton's personal story" on the February 25, 2025 Swallow Your Pride podcast, "Episode 360 — When Beauty Treatments Go Wrong," *Id.* ¶¶ 63, 127. These are representations directed to the consuming public through a promotional channel, made to induce interest in and sales of *Notox*.

The Motion's reliance on *ISI International*, 316 F.3d 731 (7th Cir. 2003), is therefore misplaced. *ISI*, applying *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800 (7th Cir. 2001), recognized that private "letters sent to customers" fall outside § 43(a)(1)(B). *ISI*, 316 F.3d at 733. The statements Helton identifies are not private letters to individual recipients; they are public representations to the reading and listening market–statements made on a widely distributed podcast and to "potential consumers and readers" at large. That is the paradigm of "promotion" the statute reaches: commercial speech, by a party with a competitive interest in selling the good, disseminated to the relevant purchasing public to influence the purchase of that good. *See First*

*Health,* 269 F.3d at 803-04 (distinguishing statements from executives/lawyers over a conference table from advertising, which is a form of promotion to anonymous recipients). Applying *First Health*, a court in this Circuit recently declined to resolve the question at the pleading stage at all, holding that whether a defendant's presentations constituted commercial advertising or promotion "requires a factual inquiry that is simply inappropriate for a Rule 12(b)(6) dismissal motion." *Ortho-Tain*, 2024 WL 3925408, at *5–6.

The Motion's argument that if "letters to customers" are outside the statute, "then so is merely discussing the contents of a book," [Dkt. 58. at p. 4], mischaracterizes the pleading: Helton does not allege McCue merely "discuss[ed] the contents of a book." She alleges McCue made affirmative, false representations about Dr. Helton's involvement in and endorsement of the book. McCue made representations that she interviewed Dr. Helton, that Dr. Helton mentored her, and that she had personal knowledge of Dr. Helton's story to lend the book credibility and drive sales. [Dkt. 35, ¶¶ 61–63, 125–127.]

B. The "information and belief" allegations satisfy Rule 9(b) as pleaded, because the underlying facts lie peculiarly within McCue's knowledge.

The Motion is correct that a Lanham Act § 43(a) claim grounded in deception may be subject to Rule 9(b). *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014). However, Rule 9(b)'s particularity requirements may be relaxed where the specific facts are peculiarly within the defendant's knowledge or control, and pleading on information and belief is permissible in that circumstance so long as well-pleaded factual allegations support the belief. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 887-88 (N.D. Ill. 2019) (sustaining Lanham Act allegations pleaded on information and belief where the plaintiff pleaded that the underlying facts were inaccessible to it and pleaded grounds making the fraud plausible, and recognizing that courts

10

remain "sensitive to the information asymmetries that may prevent a plaintiff from offering more detail").

*VitalGo* states the requirement in two parts: the pleader must plead that the facts constituting the fraud are not accessible to her, and must plead facts supplying the grounds for her belief. *Id.* Dr. Helton pleads both. As to accessibility, she has conversed with McCue once, [Dkt. 35, ¶ 112], and as of January 21, 2025, she had no copy of *Notox* and "no actual knowledge of its contents or subject matter," [*Id.*, ¶ 65]; the precise content of McCue's representations to her readers, podcast audiences and interviewers, and McCue's knowledge of their falsity, lie within McCue's possession, not Dr. Helton's. As to grounds, Dr. Helton pleads the named podcast and episode, [*Id.*, ¶ 127], the twenty-day drafting-to-publication timeline, [*Id.*, ¶¶ 59, 89–90], McCue's own citation of "personal communications with Dr. Helton" as a source in *Notox*, [*Id.*, ¶ 164], and the six pages of previously non-public material, [*Id.*, ¶ 163]. Accordingly, the precise content of McCue's representations to third-party readers, podcast audiences, and interviewers, and McCue's knowledge of their falsity, are matters within McCue's possession, not Dr. Helton's.

Notably, in *Gensler* itself the Seventh Circuit vacated a Rule 12(b)(6) dismissal of a § 43(a) claim even after identifying particularity concerns of its own. 764 F.3d at 737. Even so, where Rule 9(b) requires the "who, what, when, where, and how," *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019), Dr. Helton pleads each: the speaker (McCue); the false representations (that McCue interviewed Dr. Helton, that Dr. Helton was her "mentor," and that McCue had "close and personal knowledge of Dr. Helton's personal story"); the audience (potential readers of *Notox* and a podcast audience); and the surrounding circumstances. [Dkt. 35, ¶¶ 124–128.] The pleadings are sufficient to provide McCue adequate notice of the claims against her.

11

IV.    **The California Statutory Claims (Counts III and IV) adequately plead standing, and the UCL Claim Survives on Its Unlawful, Unfair, and Fraudulent Prongs.**

Counts III (false advertising, Cal. Bus. & Prof. Code § 17500) and IV (unfair competition, Cal. Bus. & Prof. Code § 17200) share a common standing requirement and a common factual basis, and the Motion attacks both on the same ground: that Dr. Helton has not pleaded "lost money or property." [Dkt. 58, pp. 4-6.] The Motion does not dispute that Dr. Helton has pleaded a false or misleading statement, its dissemination in commerce, or the materiality of the underlying statements as to either claim. Because the standing analysis is common to both claims, it is addressed once below, followed by two arguments unique to Count IV.

A.    Both claims satisfy the "lost money or property" standing requirement.

A private plaintiff under either statute must have "suffered injury in fact and … lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; see § 17535 (parallel standing provision for § 17500 claims). The Motion's own lead authority defines that requirement and defeats its argument. In *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), the California Supreme Court held that the requirement is satisfied by economic injury construed broadly, observing that "there are innumerable ways in which economic injury from unfair competition may be shown." *Id.* at 323. A plaintiff establishes standing by alleging (1) economic injury and (2) causation by the challenged practice. *Id.* at 322. *Kwikset* enumerates the qualifying injuries: a plaintiff may "(1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 323. Dr. Helton's injury falls within the second and third categories.

12

Critically, *Kwikset* also holds that the standing inquiry is separate from and less demanding than the question of what relief the plaintiff may ultimately recover: standing turns on whether the plaintiff *lost* money or property, not on whether she can recover it from the defendant. *Id.* at 337 (holding that ineligibility for restitution is not a basis for denying standing). That distinction disposes of much of the Motion, which repeatedly conflates the two.

Dr. Helton also pleads a concrete economic injury. Reading the claims with the incorporated allegations, as the pleading directs, she alleges the "commercial exploitation of her name, likeness, and personal story" and "impairment of Dr. Helton's commercial and professional economic opportunities," Dkt. 35 ¶ 118; that McCue rushed *Notox* to market to "beat Dr. Helton to the market before Dr. Helton had completed her own manuscript," *Id.* ¶ 3; and that McCue used misappropriated materials to "bypass years of necessary research and expense," *Id.* ¶ 83.

Most directly, the incorporated Factual Narrative identifies the property interest at stake and alleges its diminution: Dr. Helton's Trade Secret and Research Compilation are "a distinct, proprietary economic asset compiled and curated by her that assisted in securing a $15,000,000 product liability lawsuit verdict," and their uncontrolled publication "threatens its status as a trade secret, thereby destroying its economic benefit" and will "permanently diminish the Trade Secret and Research Compilation's proprietary nature and economic value." *Id.* ¶ 107; *see Id.* ¶ 108 (over fifteen years of curation; destruction of the manuscript's first-to-market value; "siphoning potential readership and sales"). That is the diminution of a present property interest Dr. Helton already holds (*Kwikset*'s second category) and not a mere expectancy of future income.

The Motion's insistence that Dr. Helton must offer "a competing book for sale" misreads the standard. [Dkt. 58, p. 5.] Neither statute conditions standing on the plaintiff having brought a finished product to market; the question is whether she lost money or property, and a diminution

13

in the value of property she already holds satisfies that requirement. Whether that injury can be quantified or proven is a summary-judgment question; a plausible allegation of economic injury and causation is all the pleading stage requires. *Kwikset*, 51 Cal. 4th at 323–25.

B. The UCL claim survives on the "unlawful" and "fraudulent" prongs regardless of the competition question.

The Motion's remaining § 17200 arguments, that McCue's book cannot "compete" with an unpublished manuscript and that "[a]bsent competition, there can be no unfair competition," misapprehend the statute. [Dkt. 58, p. 6.] California's UCL is written in the disjunctive and thus establishes three varieties of unfair competition: "any unlawful, unfair **or** fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (emphasis added). Direct competition is not an element of any prong.

The "unlawful" prong borrows violations of other laws and makes them independently actionable; Dr. Helton's UCL claim therefore survives so long as any predicate survives (e.g., the Lanham Act claims, the common-law fraud claim, or the Section 632 claim). See *Cel-Tech Commc'ns v. L.A. Cellular Tel.*, 20 Cal. 4th 163, 180 (1999). Dr. Helton also directly pleads unfair and fraudulent business practices. [Dkt. 35, ¶¶ 143–146.] McCue's "no competition" argument is beside the point: the UCL does not require a competitive relationship, and in any event Dr. Helton pleads one. [*Id.*, ¶ 145.] Taken as true, that allegation defeats the Motion's "absent competition" premise on its face.

C. The Motion's restitution argument goes to remedy, not to the sufficiency of the claim.

The Motion argues that the § 17200 claim fails because restitution requires that money or property "be lost by the plaintiff AND … acquired by the defendant," and that Dr. Helton has not alleged McCue "received the 'money or property' Helton allegedly lost." [Dkt. 58, p. 6-7] (citing

14

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), and *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002)). That argument attacks the **scope of an available remedy**, not the existence of a claim, and it fails at the pleading stage for two reasons.

First, as *Kwikset* holds, standing does not depend on the recoverability of restitution; a plaintiff with economic injury has standing even where restitution may be unavailable. *Kwikset*, 51 Cal. 4th at 337. The *Korea Supply* limitation the Motion invokes defines when a **restitutionary** remedy lies; it does not convert every UCL claim into one that must satisfy the restitution test to be pleaded. Second, the UCL independently authorizes injunctive relief, and Dr. Helton expressly seeks it: an order restraining McCue's continued unfair and fraudulent conduct [Dkt. 35, ¶ 148], and an order requiring corrective notices and advertising [*Id.*, Prayer ¶ H; *see Id.* ¶¶ 121, 130]. The California Supreme Court has held squarely that "the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 789–90 (2010); *accord Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013). Even accepting the Motion's restitution analysis in full, the claim survives as a vehicle for that equitable relief.

## V.    The Fraudulent-Misrepresentation Claim Pleads Actionable Promissory Fraud.

McCue argues that there was no misrepresentation of "past or existing fact" because she at most failed to disclose a future book, invoking the rule that "statements regarding future events are merely deemed opinions." [Dkt. 58, p. 7 (quoting *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 309–10 (2000)).] That argument misapprehends the claim and misreads the pleading.

Read as pleaded, Dr. Helton alleges that McCue affirmatively misrepresented that she "wanted to speak with Dr. Helton solely as a botulism victim" when, "at the time it was made,"

15

McCue's actual intention was to mine Dr. Helton as a sourced reference for an imminent book, and did so knowing Dr. Helton would refuse a conversation if told the truth. [Dkt. 35, ¶¶ 167–168.] Accordingly, Dr. Helton does not plead a statement about a future event; she pleads a misrepresentation of McCue's **then-present intent**. Those allegations state a claim under California law and are pleaded with the particularity required by Rule 9(b).

    A.  <u>The Motion misreads the pleading; there is no admission and no contradiction.</u>

The Motion contends that Dr. Helton "admits" she knew McCue's purpose because the pleading alleges McCue's January 6 text "cited a desire to raise awareness among speech-language pathologists via a podcast." [Dkt. 58, p. 7-8 (citing Dkt. 35 at ECF 190).] But that allegation is pleaded as part of the misrepresentation itself, not as knowledge of the truth. [See Dkt. 35, ¶ 155.] The very effect is specifically alleged: "Dr. Helton was led to believe that McCue was another botulism victim and victim-advocate seeking Dr. Helton's medical and educational perspective." [*Id.*, ¶ 156.] In other words, the podcast statement is the false pretense that deceived Dr. Helton, not proof that she saw through it. The Motion's alleged "admission" is directly contradicted by the pleading.

The Motion's related assertion, that Dr. Helton "admits she did not disclose … any information about … her personal botulism story or botulism research" on the call, also cuts against McCue [Dkt. 58, p. 8 (citing Dkt. 35 [ECF 190]).] That McCue could reproduce, in a book published eleven days after the call, not only non-public details of Dr. Helton's personal story but advanced analyses and conclusions drawn from Dr. Helton's own research, i.e., material Dr. Helton did not detail on the call, is affirmative support for the fraud, not a contradiction of it. [Dkt. 35 ¶¶ 42–44, 52, 71, 157.] While Dr. Helton disclosed none of this material on the call, Dr. Helton alleges that McCue obtained the material elsewhere or under false pretenses and then falsely cited

16

"personal communications with Dr. Helton" as her source. [*Id.* ¶¶ 115, 164]. The non-disclosure allegation is a building block of Dr. Helton's claim, not a contradiction of it.

      B.  <u>Dr. Helton pleads actionable misrepresentation of present fact, not an unfulfilled promise</u>.

The Motion argues there was "no misrepresentation" because McCue asserted no fact she knew to be untrue, and that Dr. Helton's real complaint is only that McCue "did not disclose she intended to write a book," which the Motion frames as an unknowable future intention. [Dkt. 58, p. 9.] Again, Dr. Helton does not allege McCue broke a promise about the future; she alleges McCue misrepresented **presently existing facts**: her purpose in making contact and her status as a mere victim with a desire to raise awareness amongst peers, at a time when those representations were already false. [Dkt. 35, ¶¶ 30-32, 154-162.]

A misrepresentation of one's present intention or present state of mind is a misrepresentation of fact and is actionable as promissory fraud, as McCue's own lead authority supports. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (a promise or representation of present intent made without the intention to perform is an actionable misrepresentation of fact); *accord Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012) (stating the elements of promissory fraud). The "future events" rule of *Neu-Visions* simply does not apply to a present-intent theory. *See Service by Medallion v. Clorox*, 44 Cal. App. 4th 1807, 1816 n.1 (1996) (noting that the defendant's argument that expression of a goal in the future is not actionable because it is an expression of opinion is incorrect because "representations of one's goals or intentions are statements of fact, not opinion, as they assert the fact of a present state of mind") (citing *Las Palmas Assoc. v. Las Palmas Center Assoc.,* 235 Cal. App. 3d 1220, 1238 (1991)).

Moreover, Dr. Helton pleads the circumstantial facts that support an inference of contemporaneous fraudulent intent: McCue self-published *Notox* roughly eleven days after the

17

January 8 call and cited "personal communications with Dr. Helton" as a source, after she and Talkington framed McCue as a "victim" to circumvent Dr. Helton's known no-interview policy. [Dkt. 35, ¶¶ 153–156, 163–166.] The pleading does not rest on that timeline alone. It alleges McCue's state of mind **before** the call: that McCue "knew before the January 8, 2025, call with Dr. Helton that Talkington had used false pretenses in enticing Dr. Helton to participate," [*Id.*, ¶ 158]; that McCue "knew or had reason to believe that Dr. Helton would become guarded or terminate the call if [McCue] revealed her true intentions," [*Id.*, ¶ 159]; and that McCue "maintained the false narrative" through the call itself, [*Id.*, ¶ 160]. McCue's argument that this theory "contradicts" Dr. Helton's other allegations is a merits dispute that cannot be resolved on a Rule 12(b)(6) motion, and the damages element is adequately pleaded. [*Id.*, ¶ 169.]

## VI. The Civil-Conspiracy Claim Is Derivative and Survives With the Underlying Torts.

McCue argues that civil conspiracy is not an independent tort and is "coextensive" with the fraud claim, so it falls with the fraud claim. [Dkt. 58 at 9–10 (citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994)).] McCue is right that conspiracy is derivative, which is precisely why it survives here. Because the fraud claim is adequately pleaded, see *supra* Part V, the derivative conspiracy claim stands with it. And because the conspiracy claim incorporates the Counterclaims and Factual Narrative, [Dkt. 35, ¶ 171], it is not confined to the fraud tort alone. Dr. Helton independently pleads the elements of a California civil conspiracy: an agreement between McCue and Talkington on a common plan, a wrongful act committed in furtherance of that plan, and resulting damages. [*Id.*, ¶¶ 158, 171–174, 181–183; *see City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 211–12 (2011) (elements).] The agreement is pleaded with particularity as to time and purpose: "[p]rior to the January 8, 2025, telephone conversation, Talkington and [McCue] acted in concert to deceive Dr. Helton by collectively

18

agreeing, planning, conspiring, and cooperating to fraudulently misrepresent [McCue's] physical condition and intentions to Dr. Helton for the purpose of inducing Dr. Helton to speak with [her]." [*Id.*, ¶ 181.] Having answered McCue's sole argument, Dr. Helton has shown the conspiracy claim should proceed.

### VII.    The Section 632 Recording Claim Is Not Time-Barred—McCue's Own Authority Applies the Discovery Rule.

McCue argues that the Cal. Penal Code Section 632 claim is barred by a one-year limitations period because the call occurred on January 8, 2025, and the original Third-Party Complaint was filed on January 12, 2026. [Dkt. 58 at 11 (citing *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (1987)).] The Motion does not deny the recording or challenge any element of the claim; its sole ground is limitations, and it fails at the pleading stage.

Limitations is an **affirmative defense**, and dismissal under Rule 12(b)(6) is proper only where the plaintiff has pleaded itself out of court, that is, only where the pleading's own allegations establish that the claim is untimely. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 782 F.3d 922, 928 (7th Cir. 2015) ("[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)"); *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *Estate of Darger v. Lerner*, 665 F. Supp. 3d 931, 937–38 (N.D. Ill. 2023) (denying a Rule 12(b)(6) limitations dismissal of Lanham Act and unfair-competition claims and applying *Sidney Hillman Health*). The Seventh Circuit reaffirmed the point this year in vacating a Rule 12(b)(6) timeliness dismissal, observing that "[a]t the pleading stage, there will usually be an 'obvious need for further factual development'" before a court resolves an equitable tolling question. *Ballard v. Ameren Ill. Co.*, 173 F.4th 946, 953 (7th Cir. 2026) (quoting *Watkins v. Mohan*, 144 F.4th 926, 941 (7th Cir. 2025)); see *Burton v. Ghosh*, 961 F.3d 960, 964–

19

65 (7th Cir. 2020) (the ordinary vehicle for a dismissal resting on an affirmative defense is a Rule 12(c) motion for judgment on the pleadings).

Here the allegations establish the opposite of untimeliness. Dr. Helton alleges that McCue recorded the January 8, 2025 call **without her knowledge or consent** and that "[h]ad Dr. Helton known … she would have … terminated the call." [Dkt. 35, ¶¶ 46, 162.] A complaint alleging a **secret** recording does not reveal on its face when the plaintiff discovered it, and the accrual date therefore cannot be fixed from the pleading alone.

*Montalti*, McCue's own authority, applies the discovery rule to a secret-recording penalty claim, holding that it "would be incongruous . . . to hold that the statute of limitations **begins to run while the monitoring remains secret.**" 191 Cal. App. 3d at 98 (emphasis added). The court reasoned that "[b]y its nature, secret monitoring of private conversations is conduct not subject to contemporary reasonable discovery," and that applying the general rule "would reward those most pernicious wrongdoers who successfully maintain the secrecy of their surreptitious acts." *Id.* As pleaded, Dr. Helton was never asked for and never gave consent to the recording. pleads that McCue recorded the January 8 call without her knowledge or consent; that she was never asked for and never gave consent to record; and that, had she known, she "would have either not participated in the call or immediately terminated the call." [Dkt. 35, ¶¶ 192–195.] The pleading nowhere alleges when Dr. Helton learned of the recording; indeed, its existence is pleaded "[u]pon information and belief." [*Id.*, ¶ 193.] Taking those allegations as true, nothing on the face of the pleading establishes that Dr. Helton knew of the recording at any time more than one year before suit, so under *Montalti* the limitations period cannot be shown to have begun to run, and accrual cannot be determined against her on the pleadings.

20

Even on McCue's own accrual theory, the asserted overrun is four days, from a January 8, 2025 call to a January 12, 2026 filing, which only underscores that timeliness turns on a discovery-rule question that cannot be resolved on a motion to dismiss. Finally, McCue's own authority confirms that California is an all-party-consent jurisdiction *(Rojas v. HSBC Card Services, Inc.*, 93 Cal. App. 5th 860, 871 (2023)), and Dr. Helton pleads that she never consented; the only defense McCue raises, limitations, necessarily fails at the pleading stage.

## VIII.   Any Dismissal Should Be With Leave to Amend.

McCue asks the Court to dismiss with prejudice because Dr. Helton "already amended once" and her pleadings are verified. [Dkt. 58 at 11.] That is not the standard. Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." In this Circuit there is a presumption that a plaintiff should have at least one opportunity to amend before a Rule 12(b)(6) dismissal is made final; denying that opportunity "carries a high risk of being deemed an abuse of discretion." *Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 518 (7th Cir. 2015). Neither the prior amendment, which did not focus on or address Dr. Helton's Third-Party Claims against McCue, nor the verification of the pleading forecloses a curative amendment, and McCue identifies no reason any attempt at amendment would be futile. Dr. Helton does not concede that any Third-Party Claim is deficient, and she does not seek leave to amend at this time. Accordingly, and strictly in the alternative, should the Court dismiss any Third-Party Claim, Dr. Helton respectfully requests leave to amend that claim to cure the deficiency the Court identifies.

### CONCLUSION

For the foregoing reasons, Third-Party Plaintiff Dr. Sharla Helton respectfully requests that the Court deny McCue's Motion to Dismiss the Third-Party Claims in its entirety or, in the

alternative, grant any dismissal with leave to amend, and grant such further relief as the Court deems just and proper. Dr. Helton does not request oral argument under CDIL-LR 7.1(A)(2). Should the Court conclude that oral argument would aid its consideration of the Motion, however, counsel for Dr. Helton stands ready to appear.

Dated: July 29, 2026

Respectfully submitted

SHARLA HELTON, by and through

_____

Douglas J. Sorocco, IL 2381747; Okla Bar 17347
Jessie Sadlon, Okla. Bar 36432
DUNLAP CODDING, PC
609 W. Sheridan Avenue
Oklahoma City, OK 73102
Tel: 405.607.8686; Fax: 405.607.8686
dsorocco@dunlapcodding.com

22

**CERTIFICATE OF COMPLIANCE**

Pursuant to CDIL-LR 7.1(B)(4)(c), the undersigned certifies that this memorandum complies with the type volume limitation of CDIL-LR 7.1(B)(4)(b) because, exclusive of the caption, signature block, and certificates, it contains 6870 words as counted by the word-count function of Microsoft Word.

/s/ Douglas J. Sorocco
Douglas J. Sorocco

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Douglas J. Sorocco
Douglas J. Sorocco

23